UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

NATHANIEL RICHARD HULL,    )
Chapter & Trustee,          )
                            )
            Appellant,       )
                            )
    v.                      )        2:18-cv-00385-JAW
                            )
JEFFREY J. ROCKWELL         )
Debtor,                     )
d/b/a/ Rockwell Productions )
formerly d/b/a/ Rockwell Productions )
Inc.                        )
                            )
            Appellee.        )

## ORDER ON BANKRUPTCY APPEAL

This bankruptcy appeal presents a narrow question of law that calls on the

Court to resolve conflicting provisions of state and federal law. To be eligible for a

state homestead exemption, a resident who claims the exemption and sells the

residence must invest the exempt proceeds in another residence within six months of

the sale. If the person claiming the exemption fails to make a timely investment, the

exemption disappears or becomes—in the language of the law—a vanishing

exemption. By contrast, in bankruptcy law, the well-known snapshot doctrine

dictates that the rights and obligations of the debtor become frozen as of the date of

a bankruptcy filing, much as a snapshot freezes the image of an object as of a specific

time. If the snapshot is complete, it cannot be changed; if partial, it is subject to

revision based on subsequent events.

In this case, a person, who filed in chapter 13 and converted into a chapter 7 bankruptcy, sold the residence during the chapter 13 proceeding and failed to invest the proceeds of the sale of the residence within six months as state law requires. The issue on appeal is whether the person loses the exemption or retains it; or, applying terms of bankruptcy law, whether the snapshot is complete or partial. In practical terms, the resolution of this question determines whether the amount of the claimed exemption may be retained by the person filing in bankruptcy or must be transferred to the trustee for distribution in accordance with bankruptcy law.

The Bankruptcy Court, in a well-researched and thoughtful opinion, ruled that the homestead exemption does not vanish, because the snapshot is complete as of the date of bankruptcy filing. The effect of the Bankruptcy Court ruling is to allow the person claiming the exemption to retain it despite the failure to comply with the six-month limitation. Although there are persuasive arguments for either position, the Court agrees with the Bankruptcy Court and affirms its ruling.

## I. BACKGROUND

### A. Procedural History

On September 20, 2018, chapter 7 trustee Nathaniel R. Hull filed an appeal pursuant to 28 U.S.C. § 158 from the August 23, 2018 Order of the United States Bankruptcy Court for the District of Maine overruling Mr. Hull's objection to Mr. Rockwell's claimed homestead exemption. *Notice of Appeal* (ECF No. 1). On November 2, 2018, Mr. Hull filed his brief in support of the appeal. *Br. of the Appellant* (ECF No. 5) (*Appellant's Br.*). On December 3, 2018, Appellee Jeffrey J.

Rockwell filed his response. *Br. of Appellee Jeffrey J. Rockwell* (ECF No. 7) (*Appellee's Opp'n*). On December 17, 2018, Mr. Hull filed his reply. *Reply Br. of Appellant* (ECF No. 8) (*Appellant's Reply*).

## B. The Bankruptcy Court Proceedings

### 1. Facts

The facts are undisputed. Jeffrey J. Rockwell purchased the property and buildings located at 24 B Street, South Portland, Maine, in 2001. *Bankruptcy Appeal*, Attach. 4 at 2 (ECF No. 1) (*Mem. of Decision*); *Appellee's Opp'n* at 2. On August 19, 2015, Mr. Rockwell filed a voluntary petition for relief in Bankruptcy Court, pursuant to the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 101, *et seq. Mem. of Decision* at 2; *Appellee's Opp'n* at 2. At the time of his petition, he owned and resided at the property. *Mem. of Decision* at 2; *Appellee's Opp'n* at 2 ("The Appellee had owned the Property since 2001 and it was the Appellee's primary residence").

According to Mr. Rockwell's chapter 13 bankruptcy schedule, pursuant to 11 U.S.C. § 522(b)(3)—which allows a debtor to claim available state law exemptions—he claimed an exemption under Maine's homestead exemption statute, 14 M.R.S.A. § 4422(1), in the maximum statutory amount of $47,500, based on his equity in the property. *Mem. of Decision* at 2.

In November 2015, the Bankruptcy Court confirmed Mr. Rockwell's chapter 13 plan of reorganization. *Id.* His plan anticipated he would directly pay the holder of the first mortgage on the property and retain the B Street property. *Id.* However, by December of 2016, Mr. Rockwell decided to sell the property. *Appellee's Opp'n* at 2.

Mr. Rockwell sought permission from the Bankruptcy Court to sell the property for $160,000 and to apply any non-exempt proceeds from the sale to the chapter 13 plan. *Id.*

At the hearing on the motion to sell the B Street property, the chapter 13 trustee, in his words, "mildly" voiced concerns about the sale price but expected the Bankruptcy Court would grant the motion to sell as a proper exercise of Mr. Rockwell's business judgment. *Mem. of Decision* at 2. On January 12, 2017, the Bankruptcy Court approved the change, authorizing Mr. Rockwell to sell the B Street property and to pay from the proceeds of the sale (1) his ordinary and customary closing expenses, (2) the balance due to U.S. Bank, and (3) to contribute any non-exempt sale proceeds to his chapter 13 plan. *Id.*

The closing took place on March 6, 2017. *Id.* After the closing, $51,682.87 remained after the first mortgage obligation was satisfied and closing costs were paid; Mr. Rockwell received $47,500 and Mr. Hull, as chapter 13 trustee, received $4,182.87. *Mem. of Decision* at 2. Under 14 M.R.S. § 4422(1)(C), a person claiming a homestead exemption must reinvest the exempted portion of the proceeds of the sale of the residence in a new residence within six months. *Id.* ("**C.** That portion of the proceeds from any sale of property which is exempt under this section shall be exempt for a period of 6 months from the date of receipt of such proceeds for purposes of reinvesting in a residence within that period"). However, contrary to the express requirements of Maine's homestead exemption, **Mr. Rockwell did not spend any of the**

proceeds of the sale on the purchase of a new residence. *Bankruptcy Case No.* 15-20583 (*Bankruptcy Case*), *Stipulation* (ECF No. 144) (*Stip.*).

On August 7, 2017, Mr. Rockwell converted his chapter 13 bankruptcy to a chapter 7 bankruptcy case. *Appellee's Opp'n* at 3; *Mem. of Decision* at 2-3. On November 8, 2017, the Bankruptcy Court granted an order of discharge under 11 U.S.C. § 727. *Bankruptcy Case, Order Discharging Debtor* (ECF No. 123). As of the date of the conversion, Mr. Rockwell had spent $18,806.23 of the proceeds of the sale, leaving a balance of $28,693.77. *Mem. of Decision* at 3. On December 4, 2017, Mr. Hull filed an objection to Mr. Rockwell's claim of exemptions pursuant to Rule 4003(b) of the Federal Rules of Bankruptcy Procedure, claiming that Mr. Rockwell failed to meet the six-month reinvestment requirement of Maine's homestead exemption. *Bankruptcy Case, Obj. to Debtor's Claim of Exemptions*, at 1-2 (ECF No. 125). The Bankruptcy Court held a trial on May 22, 2018 and overruled Mr. Hull's objection in its August 23, 2018 Order and Memorandum of Decision. *See Order* at 1; *Mem. of Decision* at 1.

### 2. Memorandum of Decision

In its Memorandum of Decision, the Bankruptcy Court "examine[d] the permanence of an exemption claim in proceeds resulting from the sale of the debtor's homestead in a converted chapter 7 case in a jurisdiction with a temporal limit to its homestead proceeds exemption . . .." *Mem. of Decision* at 1. The Bankruptcy Court acknowledged that "[t]here is no specific controlling authority from the United States Court of Appeals for the First Circuit on the exact issue presented in the case and

there is no uniform approach among the courts to vanishing state law homestead proceeds exemptions in bankruptcy[.]" *Id.* at 5.

The Bankruptcy Court discussed at length the two approaches used by other courts when applying similar exemptions to chapter 7 cases: the partial snapshot view and the complete snapshot view. *Id.* at 8. As the Bankruptcy Court explained, "[t]he 'snap-shot' doctrine provides that the rights of the debtor, and the facts and circumstances that undergird those rights, are locked in as of the petition date." *Id.* at 8 n.8. However, some courts interpret the snapshot rule as incorporating the debtor's post-petition failure to reinvest the proceeds in another residence, as required by the temporal limitation on a state's homestead exemption, while others hold the exemption as fixed as of the date of filing. *Id.* at 9-10. After discussing these two approaches, the Bankruptcy Court concluded that "the complete snap-shot view more faithfully adheres to the Code, First Circuit authority, and the practicalities of administering a chapter 7 case." *Id.* at 11.

## II.    POSITIONS OF THE PARTIES

### A.    Brief of Appellant Nathaniel Hull

Mr. Hull's appeal

> challenges the Bankruptcy Court's conclusion that Maine's homestead proceeds exemption . . . does not continue to operate during the course of a bankruptcy case and, instead, is frozen in time at the filing date and immutable thereafter, even by the voluntary failure of the debtor to comply with Maine's statutory reinvestment requirement.

*Appellant's Br.* at 4. According to Mr. Hull, "in the absence of an overriding Bankruptcy Code policy that would compel such a drastic departure from the operation of Maine's exemption scheme, the Bankruptcy Court should adhere to the

calibrated limitations placed on exemptions by the State of Maine." *Id.* at 5. Mr. Hull contends that the "partial" snapshot rule would reflect the deference Congress has given states to define exemptions under state law, while also adhering to Supreme Court caselaw regarding homestead claims. *Id.* at 7.

According to Mr. Hull, the fact that Congress allows states to opt out of the set of federal exemptions in § 522(b) in favor of the state's own exemptions shows a congressional intent to defer to the state's interest regarding the applicability of exemptions, a priority reflected in *Butner v. United States*, 440 U.S. 48, 55 (1979). *Appellant's Br.* at 8-9. Furthermore, Mr. Hull argues that applying the partial snapshot approach is in keeping with the purpose behind the homestead exemption under 14 M.R.S. § 4422(1), which is to "preserve the equity value that the homeowners built up in the first home, to the extent of the maximum amount of the exemption." *Appellant's Br.* at 11 (citing *In re Grindal*, 30 B.R. 651, 653 n.4 (Bankr. D. Me. 1983)). The Bankruptcy Court's interpretation, Mr. Hull argues, favors non-homeowners over homeowners and results in a dramatic difference in the exempted property allowed for a debtor in a bankruptcy case in comparison with a non-debtor who has not sought bankruptcy protection. *Id.* at 12-14.

Mr. Hull contends that the Bankruptcy Court erred in concluding that the six-month limitation under § 522(b) conflicts with the Bankruptcy Code, because Supreme Court cases have "look[ed] to post-petition events to determine the applicability of those exemptions on the filing date." *Id.* at 15 (citing *White v. Stump*, 266 U.S. 310 (1924); *Myers v. Matley*, 318 U.S. 622 (1943)). Mr. Hull also cites the

Fifth Circuit, which, in applying *White* and *Myers* in a vanishing exemption case, concluded that

> *Myers* thus confirms the basic holding from *White v. Stump* that the law and facts existing on the date of filing the bankruptcy petition determine the existence of available exemption, but flags the important reminder that it is the entire state law applicable on the filing date that is determinative.

*Id.* at 21 (citing *In re Zibman,* 268 F.3d 298, 304 (5th Cir. 2001)). Here, Mr. Hull says, the right to take the act authorized under § 522(b) was frozen when Mr. Rockwell filed his petition, but as Mr. Rockwell failed to take the affirmative act required by the statute, he should not reap the benefit of the exemption. *Id.* The Bankruptcy Court's application of the complete snapshot approach, Mr. Hull says, "effectively read the six (6) month limitation out of the statute, and transformed an explicitly limited exemption into a permanent one." *Id.*

Mr. Hull says that *Owen v. Owen,* 500 U.S. 305 (1991) is distinguishable because in *Owen*, a Bankruptcy Code policy expressly conflicted with the state exemption statute. As a result, "the Supreme Court held that a debtor could 'avoid' a pre-existing judicial lien encumbering property pursuant to 11 U.S.C. § 522(f) even though the state exemption statute had defined the exemption to specifically exclude property to which pre-existing judicial liens had attached." *Appellant's Br.* at 22 (citing *Owen,* 500 U.S. at 305). Mr. Hull says that *Owen* is a preemption case, whereas "[t]his case solely concerns Maine's ability to set a time in which the debtor must take an affirmative action in order to maintain a property's exempt status . . .." *Id.* at 24.

Similarly, Mr. Hull says the First Circuit case of *In re Cunningham* is distinguishable from the present case in two ways: first, it "was in a significantly different place procedurally when the appeal was taken . . . [because] the First Circuit was considering this issue only after an unsuccessful challenge to the exemption," *id.* at 25-26, and second, because the exemption in *Cunningham* was not time-limited. *Id.* at 27-28 (citing *In re Cunningham*, 513 F.3d 318, 321 (1st Cir. 2008)).

In Mr. Hull's view, *In re Williams*, however, addressed the Massachusetts law after it had been changed to a vanishing exemption similar to the exemption at issue here, and concluded that "a state law exemption defined by an innate temporal limitation shall expire pursuant to that limitation notwithstanding an intervening bankruptcy." *Id.* at 27 (citing M.G.L.A. ch. 188, § 11(a)(1); *In re Williams*, 515 B.R. 395, 403 (Bankr. D. Mass 2014)). Mr. Hull says that *In re Williams* reflects Fifth Circuit and Ninth Circuit authority regarding the operation of vanishing exemptions under similar circumstances. *Id.* at 29.

Mr. Hull cites Federal Rule of Bankruptcy Procedure 1019(2)(B)(i) as support for the partial-snapshot approach, because the rule "provides that '[a] new time period for filing an objection to a claim of exemptions shall commence under Rule 4003(b) after conversion' of a chapter 13 case to one under chapter 7." *Id.* at 30 (quoting FED. R. BANKR. P. 1019(2)(B)). Although Mr. Hull admits that "the Maine Law Court has not spoken directly about the operation of the 'vanishing' exemption," he argues that if faced with the issue, the Law Court would enforce the limitation

and deny the exemption, given the "language of the statute and the unequivocal legislative intent." *Id.* at 31-32.

Finally, Mr. Hull contends that applying Maine's temporal limitation would still allow for the prompt administration of bankruptcy cases, because the Bankruptcy Code's abandonment provision, § 554(b), allows a bankruptcy court to order the trustee to abandon any property of the estate that is "burdensome to the estate or of inconsequential value and benefit to the state" upon the request of a party in interest. *Id.* at 34-35 (quoting 11 U.S.C. § 554(b)).

## B.     Brief of Appellee Jeffrey Rockwell

Mr. Rockwell, in response, argues that the snapshot rule is a well-established "maxim in bankruptcy matters that the Supreme Court . . . articulated nearly a century ago," and that the Bankruptcy Court correctly overruled Mr. Hull's objection to Mr. Rockwell's homestead objection, "properly claimed pursuant to 11 U.S.C. § 522(b)(3) and 14 M.R.S.A. § 4422(1)(A) . . .." *Appellee's Opp'n* at 5. According to Mr. Rockwell, the Bankruptcy Court correctly concluded that the rights of a debtor to an exemption should be determined by "the facts and law in place on the petition date . . .." *Id.* (quoting *Mem. of Decision* at 8). The Bankruptcy Court's decision, according to Mr. Rockwell, reflects both "the binding precedent of the First Circuit in *Cunningham* that exemptions are determined when a petition is filed and the binding precedent of the Supreme Court that conversion from chapter 13 to chapter 7 does not change the petition date." *Id.* at 7-8 (citing *Harris v. Viegelahn*, 135 S. Ct. 1829, 1836 (2015); *Cunningham*, 513 F.3d at 324). Mr. Rockwell also quotes *Myers,* 318

U.S. at 628, for the proposition that "the bankrupt's right to a homestead exemption becomes fixed at the date of the filing of the petition in bankruptcy and cannot thereafter be enlarged or altered by anything the bankrupt may do." *Appellee's Opp'n* at 9.

Mr. Rockwell contends that "[t]o require that the proceeds of a sale that occurs during bankruptcy of a homestead property that the debtor has properly claimed as exempt be made available for the satisfaction of pre-petition debts and/or administrative expense claims would violate the fresh start principles of the Bankruptcy Code." *Id.* at 13-14 (citing *Cunningham*, 513 F.3d at 324; *Butner*, 440 U.S. 48, 55 (1979)). Mr. Rockwell says this "competing federal interest[]" overrides the temporal limitation set forth in Maine's homestead exemption provisions. *Id.* at 15. Mr. Rockwell argues that the duty of a trustee to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest" conflicts with the Maine state law provision. *Id.* at 16-17 (quoting 11 U.S.C. § 704(a)(1)). Additionally, Mr. Rockwell disputes the significance of the committee report Mr. Hull cited, arguing that it is improper to interpret legislative intent when the language of the statute is clear and unambiguous, citing *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997), and that the report itself "is by no means determinative of the legislative intent of the full Maine legislature at the time 14 M.R.S.A. § 4422(1)(C) became law." *Appellee's Opp'n* at 19.

In response to Mr. Hull's reliance on the decisions from the Fifth and Ninth Circuits *In re Frost* and *Zibman* "for the proposition that 'state law exemptions must be analyzed in terms of the exact scope of the rights [the statute] confers at the time of the bankruptcy petition,'" Mr. Rockwell says that this authority actually supports his position, because he sold the residence after he filed his bankruptcy petition. *Id.* at 21-22 (quoting *Appellant's Br.* at 29) (alteration in original). Therefore, according to Mr. Rockwell, "[t]he exact scope of the rights conferred by Maine's homestead exemption law on the Appellee at the time he filed his bankruptcy petition was for the Appellee's 'aggregate interest, not to exceed $47,500 in value, in real or personal property . . ..'" *Id.* at 22 (quoting Section 4422(1)(A)). In other words, the post-petition sale of the residence did not change Mr. Rockwell's right to the exemption claimed pursuant to section 4422(1)(A), as Mr. Rockwell says the Fifth Circuit held in *Matter of DeBerry*, 884 F.3d 526, 529 (2018), and in *In re Williams*, 525 B.R. at 397. *Appellee's Opp'n* at 22-23.

### C. Reply Brief of Appellant Nathaniel Hull

In reply, Mr. Hull states that "all of the important events underlying this dispute occurred while the Debtor maintained full control of his property under the protection of chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq. . . rather than chapter 7." *Appellant's Reply* at 1. As such, Mr. Hull argues, Mr. Rockwell "was not a passive bystander" in a chapter 7 trustee's effort to sell his home, but was in control of his property at the time the home was sold. *Id.* at 2. Mr. Hull highlights language in *DeBerry* noting that there is a key distinction between

"holding debtors accountable for their failure to reinvest homestead proceeds within the applicable statutory period" in chapter 13 cases versus chapter 7 cases. *Id.* (citing *DeBerry*, 884 F.3d at 526). Mr. Hull argues that there is "no reason why a debtor should be permitted to evade the operation of vanishing exemptions simply by converting his case from chapter 13 to chapter 7 after the house is sold and the proceeds are gone." *Id.* at 3.

Mr. Hull contends that the Fifth Circuit differentiated between the proper application of vanishing exemptions in chapter 7 and chapter 13 cases in its body of caselaw. *Id.* at 9 (citing *In re Frost*, 744 F.3d 384, 384 (5th Cir. 2014)). In *Frost*, the Fifth Circuit held that the proceeds of the sale of the debtor's residence, sold after he filed for chapter 13 bankruptcy, were "removed from the protection of Texas bankruptcy law and no longer exempt from the case" because the debtor "failed to reinvest the sale proceeds in another homestead within six months of the sale." *Id.* at 9-10 (citing *Frost,* 774 F.3d at 385, 387). Mr. Hull argues that this outcome is reasonable so that chapter 13 debtors, who maintain full control of their property during the pendency of a chapter 13 case, are held "accountable for their failure to reinvest their proceeds after a wholly voluntary sale . . .." *Id.* at 11.

Mr. Hull also disputes Mr. Rockwell's assertion that applying the full operation of Maine's vanishing exemption would lead to complications in the administration of chapter 7 cases and potential delay in their resolution. *Id.* at 11-12. Mr. Hull contends that the abandonment provision of the Bankruptcy Code could ensure prompt administration of chapter 7 cases. *Id.* at 12. Mr. Hull notes that other courts

have chosen not to base their decisions on the potential delay in the resolution of chapter 7 cases, which the Ninth Circuit called "'too speculative' to drive the decision." *Id.* at 14 (quoting *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1200 (9th Cir. 2012)).

## III. DISCUSSION

### A. Standard of Review

"Review of the Bankruptcy Court order on appeal before [the District Court] is governed by Rule 8013 of the Federal Rules of Bankruptcy, which provides a District Court may 'affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings.'" *In re Wolverine, Proctor & Schwartz, LLC,* 436 B.R. 253, 260 (D. Mass. 2010) (quoting FED. R. BANKR. P. 8013). "Although other issues may remain for resolution in a case after the determination of the Debtor's claimed exemptions, orders granting or denying exemptions are appealable as final orders . . . ." *Howe v. Richardson (In re Howe)*, 232 B.R. 534, 535 (B.A.P. 1st Cir. 1999), *aff'd*, 193 F.3d 60 (1st Cir. 1999). "[W]hen a party chooses to appeal a bankruptcy court decision to the district court pursuant to 28 U.S.C. § 158(a), the district court reviews the bankruptcy court's conclusions of law *de novo.*" *Braemer v. Lowey,* No. 08–cv–349–P–S, 2009 WL 465972, at *1, 2009 U.S. Dist. LEXIS 14426, at *1–2 (D. Me. Feb. 24, 2009) (italics in original) (citing *Davis v. Cox,* 356 F.3d 76, 82 (1st Cir. 2004); *In re Watman,* 301 F.3d 3, 7 (1st Cir. 2002)). "In accordance with Federal Rule of Bankruptcy Procedure 8013, the Bankruptcy Court's

findings of fact will not be set aside 'unless clearly erroneous.'" *Id.* at *2-3 (quoting FED. R. BANK. P. 8013).

### B.    Jurisdiction

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), as the Appellant is appealing the Order Overruling the Trustee's Objection to Mr. Rockwell's Exemption entered by the Bankruptcy Court on August 23, 2018. *See Order* at 1. "Orders granting or denying exemptions are appealable as final orders under 28 U.S.C. § 158." *Howe,* 232 B.R. at 535 (citations omitted). Mr. Hull, as chapter 7 trustee, has a right to appeal the Order because it was a final order, which he timely appealed under Bankruptcy Rule 8003. On September 19, 2018, the Appellee, Mr. Rockwell, filed his Statement of Election, electing to have this appeal heard by this Court rather than the Bankruptcy Appellate Panel for the First Circuit. *Bankruptcy Certificate of Readiness Received*, Attach. 2 (ECF No. 2).

### C.    Maine's Homestead Exemption, 14 M.R.S. § 4422

"An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen,* 500 U.S. 305, 308 (1991). "A debtor may claim that certain interests in property are exempt from the estate, thus withdrawing that 'interest . . . from the estate (and hence from the creditors) for the benefit of the debtor.'" *In re Williams*, 515 B.R. 395, 399 (Bankr. D. Mass, 2014) (quoting *Owen*, 500 U.S. at 308). Pursuant to § 522(b)(1), debtors can "elect[] between those exemptions provided in 522(d), or,

alternatively, exemptions available under state and federal non-bankruptcy law." *Howe*, 232 B.R. at 536.

Section 522(b)(1) also allows individual states to "opt out" of the § 522(d) exemption scheme, removing that option for its bankruptcy debtors. *Id.* "If a State opts out, then its debtors are limited to the exemptions provided by state law." *Owen*, 500 U.S. at 308. Maine, along with thirty other states, "opted out" of the federal exemptions. *Dubois v. Fales (In re Dubois)*, 306 B.R. 423, 427 (Bankr. D. Me. 2004). In doing so, Maine created its own exemption scheme applicable to bankruptcy proceedings, providing that "any debtor eligible for a residence exemption under section 4422, subsection 1, paragraph B, may exempt the amount allowed in that paragraph." 14 M.R.S. § 4426. This exemption allows the debtor to protect up to $47,500 in real or personal property that the debtor or the debtor's dependents use as a residence. *Id.* § 4422(1)(A). It also allows the proceeds from the sale of the exempt property to retain exempt status for six months for purposes of reinvesting in a residence. *Id.* § 4422(1)(C).

Exemptions must be considered within the context of what would otherwise be property of the bankruptcy estate, which is created "as of the commencement of the [bankruptcy] case." *Maine Dep't of Health & Human Servs. v. Getchell Agency*, No. 1:17-cv-00252-JAW, 2018 WL 1831412, at *4 (D. Me. Apr. 17, 2018) (quoting 11 U.S.C. § 541(a)(1)). "It is a basic principle of bankruptcy law that exemptions are determined when a petition is filed." *In re Cunningham*, 513 F.3d 318, 324 (1st Cir. 2008).

If Maine's homestead exemption is consistent with federal bankruptcy law, it may stand. However, if "the Maine residence exemption statute . . . is at odds with federal bankruptcy law[, a]s [*Bruin Portfolio, LLC v.*] *Leicht*[*(In re Leicht)*, 222 B.R. 670 (B.A.P. 1st Cir. 1998)], teaches, the conflicting state law provision must give way." *(In re Dubois)*, 306 B.R. 423, 427 (Bankr. D. Me. 2004).

### D. Analysis

#### 1. The Bankruptcy Court Ruling

As the Bankruptcy Court discussed in its Memorandum of Decision, the First Circuit has not directly addressed whether the Maine (or similar) homestead exemption vanishes in the circumstances of this case, *Mem. of Decision* at 5, and the Maine Supreme Judicial Court has not provided insight into the intended effect of the state law exemption in chapter 7 cases. Courts outside this circuit have taken different approaches with vanishing exemptions in the context of chapter 7 cases and have reached opposite conclusions.

For example, "the United States Courts of Appeal for the Fifth and Ninth Circuits have both held sale proceeds not reinvested within the applicable statutory periods under Texas and California law, respectively, subsequently lost their exempt status post-petition." *In re Williams*, 515 B.R. 395, 401 (Bankr. D. Mass, 2014) (citing *In re Frost*, 744 F.3d 384, 388 (5th Cir. 2014); *In re Jacobson*, 676 F.3d 1193, 1199 (9th Cir. 2012); *In re Morgan*, 481 Fed. App'x 183, 187 (5th Cir. 2012); *In re Zibman*, 268 F.3d 298, 304 (5th Cir. 2001); *In re Golden*, 789 F.2d 698, 700 (9th Cir. 1986)). The Fifth Circuit in *Zibman* cited the Supreme Court's holdings in *Myers* and *White*

as concluding that "the law and facts existing on the date of filing the bankruptcy petition determine the existence of available exemptions, [while] flag[ging] the important reminder that it is the *entire* state law applicable on the filing date that is determinative." *Zibman*, 268 F.3d at 303-04 (emphasis in original) (citing *Myers v. Matley*, 318 U.S. 622, 628 (1943); *White v. Stump*, 266 U.S., 310, 310 (1924)).

Other courts have held that "developments which occur after filing should not impact on the entitlement to an exemption properly claimed at filing," highlighting the inefficiency and uncertainty that could result from trustees waiting for an exemption to expire before closing a chapter 7 case, *id.* (quoting *In re Snowden*, 386 B.R. 730, 734 (Bankr. C. D. Ill. 2008); *In re Lantz*, 446 B.R. 850, 861 (Bankr. N. D. Ill. 2011)), and the importance of the fresh start principles of the Bankruptcy Code. *In re Awayda*, 574 B.R. 692, 695 (Bankr. C.D. Ill. 2017). As one court stated, "[a] debtor is not required to maintain exempt property in its exempt state indefinitely after filing in order to avoid a retroactive loss of the exemption." *In re Hageman*, 388 B.R. 896, 900 (Bankr. C. D. Ill. 2008).

In light of this divergent body of caselaw, the Bankruptcy Court weighed both approaches and concluded "that the complete snap-shot view more faithfully adheres to the Code, First Circuit authority, and the practicalities of administering a chapter 7 case." *Mem. of Decision* at 11. For support, it cited *In re Cunningham*, 513 F.3d 318, 324 (1st Cir. 2008), and *Law v. Siegel*, 571 U.S. 415, 422-23 (2014). *Mem. of Decision* at 11-12.

### 2. Overview

As the Bankruptcy Court's opinion thoroughly addresses the issues Mr. Hull presents on appeal, the Court declines to rewrite what the Bankruptcy Court already articulated. *See Talbott v. C.R. Bard, Inc.*, 63 F.3d 25, 31 (1st Cir. 1995); *In re San Juan Dupont Plaza Hotel Fire Litig.*, 989 F.2d 36, 38 (1st Cir. 1993) (where district judge produces a well-reasoned opinion that reaches the correct result, a reviewing court should not write at length merely to put matters in its own words). The Court writes to provide analysis on the issues Mr. Hull raised on appeal to expand slightly upon the Bankruptcy Court's order.

### 3. Practicalities of Chapter 7 Administration

First, the Court accepts the Bankruptcy Court's assessment of the pragmatic impact of the parties' respective positions on the "practicalities of administering a chapter 7 case," and its determination that the practicalities of bankruptcy administration favor Mr. Rockwell. *Mem. of Decision* at 11, 15 n.17. The Court considers the Bankruptcy Court's finding not a conclusion of law, but a finding of fact (or perhaps judicial notice) based on the Bankruptcy Court's superior knowledge of its own docket. Indeed, the Bankruptcy Court expressed concern that, if Mr. Hull's view prevailed, chapter 7 trustees would be incentivized to run out the clock, waiting out the time limit imposed by state statute to see if the bankrupt failed to comply with the state statute, a result that the Bankruptcy Court noted would be contrary to the Bankruptcy Code's directive to trustees to "expeditiously" resolve chapter 7 proceedings. *Id.* at 15 n.17 (quoting 11 U.S.C. § 704(a)(1)). The Bankruptcy Court

did not find this observation to be determinative but cited it as a "pragmatic reason against adopting the partial snap-shot approach." *Id.* The Court adopts the Bankruptcy Court's observation as reflective of its greater expertise on matters within its aegis.

In his objection, Mr. Hull writes that courts have considered arguments about the practical impact of adopting the partial-snapshot approach to be "'too speculative' to drive the decision." *Appellant's Reply* at 14 (quoting *In re Jacobson*, 676 F.3d 1193, 1200 (9th Cir. 2012)). It is true that the Ninth Circuit in *In re Jacobson* did not credit the Bankruptcy Court's assessment of the practical and policy considerations potentially affected by its ruling.

On this narrow point, this Court respectfully disagrees but only slightly with the Ninth Circuit's "too speculative" conclusion. Whether characterized as a finding of fact or a policy assessment, it strikes this Court that a bankruptcy judge is in an ideal position to evaluate the practical consequences of a bankruptcy law ruling on the administration of bankruptcy cases. At the same time, the bankruptcy judge in this case was careful to note that the assessment of the practical consequences of adopting the partial snapshot approach was "not determinative of the conclusion reached by the court." *Mem. of Decision* at 15, n.17. This Court interprets the Bankruptcy Court's discussion on the practical impact of a partial snapshot approach as of limited value because, as the Ninth Circuit intimated, it is difficult to know how a chapter 7 trustee would act in a specific future case. Yet, unlike the Ninth Circuit,

this Court does not entirely disregard the Bankruptcy Court's concerns about the impact of its ruling on the administration of bankruptcy cases.

### 4.    An Actual Conflict

Mr. Hull argues that there is no actual conflict between the Bankruptcy Code and section 4422 in this case; instead, there is "an inherent limitation to an exemption that is generally applicable"; therefore, the temporal limitation in Maine's homestead exemption must apply. *Appellant's Br.* at 6-7.    To conclude otherwise, Mr. Hull argues, would be to fail to "adhere[] to the deference Congress has provided to states to define the scope and extent of exemptions applicable in their respective state . . .." *Id.* at 7.    Mr. Hull contends that applying the complete snapshot rule to Maine's vanishing exemption, in effect, "transform[s] an explicitly limited exemption . . . to a permanent one" in cases in which a residence is sold during a bankruptcy case, but the debtor fails to reinvest the proceeds of the sale in a new residence as section 4422(1)(C) requires. *Id.* at 14.    This result, as noted by the Fifth Circuit in *Zibman*, "effectively read[s] the 6-month limitation out of the statute." *In re Zibman*, 268 F.3d 298, 304 (1st Cir. 2001).    This argument is not without merit.

In making this argument, Mr. Hull relies on the Fifth Circuit *Zibman* case. There is an important factual difference between *Zibman* and the facts of this case: here, there is no dispute that Mr. Rockwell sold his residence well after he filed for bankruptcy under chapter 13.[1]    By contrast, the debtors in *Zibman* sold the residence

---

[1]    It is well-settled that exemptions are determined at the time of filing. *In re Cunningham*, 513 F.3d 318, 318 (1st Cir. 2008).    The Bankruptcy Court, in determining the effect of Mr. Rockwell's conversion of his chapter 13 case to a chapter 7 case, concluded that pursuant to section 348(a) of the Bankruptcy Code, the conversion of a case from one chapter to another does not change the date of

before they filed under chapter 7. *Id.* at 300 ("On November 27, 1998, the Zibmans sold the Houston home . . .. [O]n February 9, 1999, the Zibmans filed for bankruptcy protection under chapter 7, claiming as exempt the full amount of the proceeds from the sale of their Houston homestead").

This was a critical distinction, according to the Fifth Circuit's later decision in *DeBerry*: "Because the *Zibman* debtor had sold the homestead prepetition, the proceeds were only conditionally exempted subject to the reinvestment Texas requires. In contrast, this homestead was owned on the date of DeBerry's filing and thus was 'subject to an unconditional exemption under Texas law.'" *In re DeBerry*, 884 F.3d 526, 529 (5th Cir. 2018) (quoting *Hawk v. Engelhart*, 871 F.3d 287, 296 (5th Cir. 2017) (holding that the exemption for retirement accounts under Texas law is unconditionally exempted at the time of the chapter 7 filing)). The *DeBerry* Court concluded that "the homestead [is] exempt because it was owned at the commencement of DeBerry's bankruptcy." *Id.* at 530.

Here, as in *DeBerry*, Mr. Rockwell's residence, at the time he filed for chapter 13 bankruptcy, was subject to an unconditional exemption provided under section 4422(1)(A). The conditional exemption that applies in the case of the sale of the

---

filing, which is the "appropriate time to use to determine [Mr. Rockwell's] rights to exempt proceeds." *Mem. of Decision* at 7.

Mr. Hull places great emphasis on the fact that at the time Mr. Rockwell sold his residence, the case was a chapter 13 case, and therefore, the decision to sell the residence was completely within his control, not the control of a chapter 7 trustee. But "[a]t no time during the chapter 13 portion of the case did the chapter 13 trustee challenge the exempt status of the $47,500 proceeds." *Mem. of Decision* at 6. Mr. Hull objected to Mr. Rockwell's exemption four months after the case was converted to chapter 7. *Id.* The Court, therefore, considers the exemption in the context of a chapter 7 case but refers back to Mr. Rockwell's original date of filing of the chapter 13 petition for the purposes of determining the property of the bankruptcy estate and Mr. Rockwell's right to exemptions.

exempted residence under section 4422(1)(C) did not apply at the time the petition was filed, because Mr. Rockwell had not yet sold the residence. In short, Mr. Hull's reliance on the Fifth Circuit's reasoning in *Zibman* is less compelling in light of the distinction the Fifth Circuit subsequently drew between pre- and post-petition proceeds in *Hawk* and *DeBerry*.

Mr. Hull argues that relevant Supreme Court and First Circuit caselaw supports the application of the partial snapshot rule, not the complete snapshot rule. *Appellant's Br.* at 6. He interprets *Myers* and *White* as "set[ting] forth the same understanding that the Supreme Court maintained as recently as 2014 when it stated in *Law v. Siegel* that 'when a debtor claims a state-created exemption, the exemption's scope is determined by state law.'" *Id.* at 16 (quoting *Law v. Siegel*, 571 U.S. 415, 425 (2014)); *see also Myers v. Matley*, 318 U.S. 622 (1943); *White*, 266 U.S. 310 (1924). However, consistent with the Fifth Circuit's clarification in *DeBerry*, Mr. Rockwell's right at the date of filing was to a permanent exemption in the equity of his residence, rather than the right to a conditional exemption in the proceeds from the sale of his residence.

### 5.     State Law and the Bankruptcy Code

Even if the conditional exemption applied at the date of petition, the cases Mr. Hull cites do not support his proposition. While it is true, as stated by the *Siegel* Court, that "federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the Code," *Siegel*, 571 U.S. at 425, "[t]he snapshot rule merely controls the moment in time upon which a debtor's right to

claim exemptions is based and what state laws apply to the facts as they are at that time." *In re Awayda*, 574 B.R. 692, 697-98 (Bankr. C.D. Ill. 2017). Here, as in *Awayda*, "the Debtor should not be deprived of her exemptions by this Court reading into the Code a provision that exemptions need not be determined as of the date of filing or can be considered conditional and subject to postpetition divestiture." *Id.* (citing *Siegel*, 134 U.S. at 424-25).

### 6. *Cunningham* **and Its Binding Force**

Mr. Hull argues that *Cunningham* can be distinguished because the case did not involve a vanishing exemption, and "*Cunningham* held that exemptions should not be subject to post-termination events but a vanishing exemption is not the same as one that is 'terminated.' Instead, a vanishing exemption merely reflects an inherent limitation on the continued entitlement to the exemption." *Appellant's Br.* at 28.

The Court disagrees and considers the First Circuit's holding instructive for the purposes of this case. In evaluating whether the proceeds from the sale of a home sold post-petition remain exempt, the First Circuit concluded "that the proceeds from the sale of the home retain the exempt status of the home itself." *In re Cunningham*, 513 F.3d 318, 320 (1st Cir. 2008). The same principle applies here, and the permanent exemption applies allowing for the debtor's interest in the residence itself under Maine's homestead exemption, rather than the conditional exemption allowed for the proceeds from the sale of the home.

### 7. Legislative Intent and Fresh Start Principles

Mr. Hull argues that applying the complete snapshot rule to Maine's homestead exemption would run against the Legislature's purpose in enacting the exemption, which he argues was "intended to help homeowners . . . maintain that status; but not to provide the debtor funds for other purposes." *Appellant's Br.* at 32 (citing *In re Grindal*, 30 B.R. 651, 653 n.4 (Bankr. D. Me. 1983). He argues that the effect of this broad interpretation "create[s] an absolute dispensation for former homeowners, increasing the allotted personal property exemption . . . one-hundred-fold during a six (6) month period following the sale simply because the debtor is operating under the protection of the Bankruptcy Code." *Id.* at 33. Again, as his position relies on the presumed intention of the Maine Legislature, Mr. Hull's argument must be considered seriously.

Nevertheless, even if the Court viewed this case as one involving the interpretation of the conditional exemption under section 4422(1)(C), the Court agrees with the Bankruptcy Court's conclusion that "such a result is not only permitted but required," given that "fresh start principles promulgated in § 522(c) override state law exemption limitations, even definitional limitations . . .." *Mem. of Decision* at 14-15 (quoing *In re Leicht*, 222 B.R. 670, 680 (B.A.P. 1st Cir. 1998)). As the First Circuit stated in *Cunningham*, "[t]he efficacy of the fresh start policy requires finality that allows a debtor to rebuild his life without fear of lingering creditors." 513 F.3d at 324. As noted earlier, when provisions of the Bankruptcy Code and state law conflict, the provisions of the Bankruptcy Code must prevail.

### 8. Conclusion

The challenge of applying state-created vanishing exemptions to chapter 7 cases is reflected in the inconsistent approaches in the caselaw. As noted by the Bankruptcy Court, neither approach is without flaws, and the outcome reached by the Bankruptcy Court could lead to what some view as unfair results in a narrow group of cases. However, the Court agrees with the Bankruptcy Court that the complete snapshot view is more in line with the "fresh start principles" of the Bankruptcy Code as well as the body of existing First Circuit and Supreme Court caselaw. The Court therefore affirms the Bankruptcy Court's decision to overrule the chapter 7 trustee's objection to the exemption.

## IV. CONCLUSION

The Court DENIES Nathaniel R. Hull's appeal of the Bankruptcy Court's Order overruling his objection to Jeffrey J. Rockwell's homestead exemption (ECF No. 1-4). The Court AFFIRMS the Bankruptcy Court's Order overruling Nathaniel R. Hull's objection to Jeffrey J. Rockwell's homestead objection in Case No. 15-20583.

SO ORDERED.


/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 24th day of September, 2019